```
                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF WASHINGTON
```

| MICHAEL SHAFFER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF KENNEWICK, a municipal corporation; SCOTT THOMPSON, in his capacity as a police officer for the City of Kennewick, and as an individual; and JOHN DOE,<br><br>　　　　Defendants. | NO. CV-11-5101-EFS<br><br>**ORDER GRANTING CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING CASE, AND CLOSING FILE** |
|---|---|

**I.   Introduction**

Before the Court, without oral argument, is Defendants the City of Kennewick and Scott Thompson's (hereinafter, "City Defendants") Motion for Summary Judgment, ECF No. 33. After reviewing the submissions of counsel, applicable authority, and the record in this matter, the Court is fully informed. For the reasons discussed below, the Court grants the City Defendants' motion.

///
///
///
//
/

ORDER * 1

**II. Background**[1]

Shortly after midnight on June 7, 2009, Benton County Deputy Sheriff Scott Benningfield was on patrol on State Route 397 northbound near Kennewick. Deputy Benningfield saw a pickup truck in front of him that was driving twenty-five miles per hour in a forty mile-per-hour zone and swerving erratically between the center line and the fog line. As Deputy Benningfield followed the pickup truck, the truck's driver turned left off of Highway 397 onto Tenth Avenue, briefly traveling in the oncoming lane of traffic on Tenth Avenue. Suspecting that the driver of the pickup truck was driving under the influence of alcohol or drugs, Deputy Benningfield initiated a traffic stop.

As Deputy Benningfield approached the parked pickup truck on foot, the truck's brake lights turned off and the truck began to roll forward,

---

[1] The parties submitted a Joint Statement of Uncontroverted Facts in relation to the City Defendants' motion. ECF No. 44. When considering this motion and drafting this background section, the Court 1) took as true all undisputed facts; 2) viewed all evidence and drew all justifiable inferences therefrom in Plaintiffs' favor; 3) did not weigh the evidence or assess credibility; and 4) did not accept assertions made by Defendants that were flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Disputed facts and quotations are supported by citation to the record, while undisputed facts are set forth without reference to an ECF number.

only to stop again. The truck's window had been rolled down, but as Deputy Benningfield approached, the driver rolled the window up. Deputy Benningfield knocked on the driver's window and asked him to roll it down; the driver responded with a blank stare, but eventually rolled down the window. Deputy Benningfield observed a strong smell of alcohol. When asked for his driver's license, the driver fumbled with his wallet before providing it to Deputy Benningfield. The driver was Plaintiff Michael Shaffer. Deputy Benningfield asked the driver if he had been drinking, to which he responded "no." Deputy Benningfield observed a box of Coors Light beer in the truck.

Deputy Benningfield returned to his cruiser to request backup, and City of Kennewick Police Officers Drew Sneyd and Scott Thompson arrived soon thereafter. When Deputy Benningfield returned to the pickup truck, he "took a quick look into the back for any just obvious weapons," but "didn't do a heavy search or anything like that." Thompson Dep., ECF No. 42-5 45:1-2, 2-3. When Deputy Benningfield reached the driver's side window, Mr. Shaffer was "passed out" in the driver's seat and Deputy Benningfield had to shake him in order to wake him. Deputy Benningfield asked Mr. Shaffer to step out of the vehicle, and he complied. As Mr. Shaffer walked to the back of the pickup truck, he had to hold the side of the truck in order to maintain his balance, eventually placing his right elbow on the rear tailgate of the truck for support. Mr. Shaffer was six feet three inches tall and weighed roughly three hundred pounds.[2]

---

[2] The parties' Joint Statement of Uncontroverted Facts asserts that Mr. Shaffer was "6'3" tall and weighed 260 pounds," ECF No. 44 ¶ 1, but

ORDER * 3

Deputy Benningfield performed a pat-down search to check Mr. Shaffer for weapons. Deputy Benningfield then told Mr. Shaffer he had reason to believe he had consumed alcohol, and asked if he would take a voluntary field sobriety test. Mr. Shaffer stated that he knew someone who could pick him up. When again asked if he would perform field sobriety tests, Mr. Shaffer stated that the police cruiser's lights were bothering his eyes, and when asked a third time, Mr. Shaffer became agitated and angry and yelled "turn those fucking lights off." Benningfield Dep., ECF No. 36-1 30:1-10. Because the officers were not parked on a public roadway, Deputy Benningfield had one of the Kennewick Police Officers deactivate the lights on his cruiser. Mr. Shaffer remained argumentative, telling Deputy Benningfield that he know someone who could just pick him up, and ultimately refusing to perform the voluntary field sobriety tests.

Deputy Benningfield then informed Mr. Shaffer that he was under arrest for driving under the influence of alcohol and told him to turn around and put his hands behind his back. Mr. Shaffer insisted again that someone could just pick him up and that he did not need to be arrested. Deputy Benningfield told Mr. Shaffer to turn around and put his hands behind his back a second time, but Mr. Shaffer continued to argue in slurred speech. Deputy Benningfield ordered Mr. Shaffer to turn around and place his hands behind his back either one or two more times, *see* Benningfield Dep., ECF No. 36-1 33:21-23; Benningfield Rep., ECF No. 36-4 at 46.

---

Mr. Shaffer testified in his deposition that he was "6'2 and a half" and was "probably around 300 pounds." Shaffer Dep., ECF No. 36-3 34:1, 8.

ORDER ˜ 4

At that point, both of the Kennewick Police Officers unholstered their "X26"-model tasers, and Deputy Benningfield warned Mr. Shaffer that if he did not turn around and put his hands behind his back, he would be tased. Officer Thompson also warned Mr. Shaffer that if he did not comply with their commands he would be tased, and directed Mr. Shaffer's attention to the red dot that was projected on Mr. Shaffer's torso by the taser's laser sight. Mr. Shaffer did not comply.[3] Deputy Benningfield

---

[3] Mr. Shaffer argues that he did begin to comply with the officers' commands, citing his testimony at deposition that after being told he was under arrest, "I says [sic] okay and I went to turn around and went to grab ahold of my pickup, put my hand on my pickup, and he grabbed one hand and the next thing I know I was laying on the ground." Shaffer Dep,. ECF No. 42-6 65:21-24. However, in light of Mr. Shaffer's earlier testimony that the only aspects of the incident he can recall are 1) being frisked, 2) being asked to put his hands behind his back, and 3) laying on the ground after being tased, Shaffer Dep., ECF No. 36-3 33:7-22, the Court finds that this assertion is flatly contradicted by the record and rejects it.

Mr. Shaffer also argues that his attempted compliance can be inferred from the fact that the taser barbs struck him "squarely in the back," Plaintiff's Statement of Facts, ECF No. 42-1 ¶ 13, but this unsupported assertion by counsel is flatly contradicted by Officer Thompson's sworn explanation of his position relative to Mr. Shaffer at the time he deployed his taser. *See* Thompson Dep., ECF No 36-5 at 24:16-

ORDER * 5

and Officer Snyed stated at deposition that Mr. Shaffer's right hand then went out of view behind the pickup truck's tailgate, *see* Benningfield Dep., ECF No. 42-3 61:8-18; Snyed Dep., ECF No. 36-2 36:7-8, but this detail is absent from Deputy Benningfield's incident report. *See* Benningfield Rep., ECF No. 36-4 45-46.

Officer Thompson deployed his taser once, striking Mr. Shaffer in his side and his back. The other officers eased Mr. Shaffer to the ground and handcuffed him. The officers summoned medical personnel to the scene, who cleared Mr. Shaffer. Mr. Shaffer complained of numbness in his left leg, so Deputy Benningfield took him to Kennewick General Hospital, where Mr. Shaffer was checked and cleared. At the Benton County Sheriff's Office jail, Mr. Shaffer gave two breath samples, which resulted in blood alcohol content readings of .197 and .200. Mr. Shaffer was charged with driving under the influence of alcohol and resisting arrest.

Mr. Shaffer filed this lawsuit in Benton County Superior Court on June 6, 2011, against Benton County, the City of Kennewick, Officer Thompson, and a John Doe Defedant. ECF No. 1. The Complaint asserts 42 U.S.C. §§ 1981 and 1983 claims for violation of Mr. Shaffer's Fourth and

---

21 ("At which point, I just said, [t]aser, taser, taser, took about a step to my right and fired both probes, and with him standing with his right arm over the vehicle, his left side was kind of turned to me a little bit. So both probes were able to go into his side and back area . . ."); *see also* Snyed Dep., ECF No. 42-4 24:12-14 ("Q: Where was he tased? A: I believe it was in the back, on the left section of his back.").

ORDER * 6

Fourteenth Amendment right to be free from excessive force, as well as claims for negligence, negligent infliction of emotional distress, and assault and battery.

Defendants removed the matter to this Court on June 17, 2011. *Id*. On January 11, 2012, the Court granted Defendants' motion for partial judgment on the pleadings, dismissing Mr. Shaffer's § 1981 claim. ECF No. 22. On May 15, 2012, the Court granted Mr. Shaffer and Benton County's stipulation of dismissal with prejudice, dismissing all claims against Benton County. ECF No. 31. On June 22, 2012, the City Defendants filed the instant Motion for Summary Judgment, ECF No. 33.

**III. Discussion**

    **A.  Legal Standard**

Summary judgment is appropriate if the record establishes "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing summary judgment must point to specific facts establishing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant summary judgment to the moving party with regard to that claim. *Celotex Corp.*, 477 U.S. at 322.

When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255. This does not mean that

a court should accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott,* 550 U.S. at 380.

**B. Analysis**

**I. Section 1983 Claim**

Mr. Shaffer asserts a 42 U.S.C. § 1983 claim against both Officer Thompson and the City of Kennewick, alleging that Officer Thompson's use of a taser during the arrest constituted excessive force when he physically brought him to the ground. Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Because Mr. Shaffer's § 1983 claim raises different issues with regard to Officer Thompson and the City of Kennewick, the Court analyzes each Defendant separately.

**a. Officer Thompson**

The City Defendants argue that Officer Thompson is entitled to qualified immunity on Mr. Shaffer's excessive force claim. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). District courts evaluating a claim of qualified immunity must analyze two questions: one, whether "the facts alleged show the officer's conduct violated a constitutional right," and two, whether the constitutional right at issue was "clearly established" at the time of

ORDER * 8

the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). District Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citation omitted). The Court begins with an analysis of the first *Saucier* factor: whether Officer Thompson's conduct violated Mr. Shaffer's constitutional right to be free from unreasonable seizure.

The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). "Even where some force is justified, the amount actually used may be excessive." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (internal quotation omitted). The Supreme Court has repeatedly cautioned that the reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene," and "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Ryburn v. Huff*, 132 S. Ct. 987, 992 (2012) (per curiam) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

ORDER ~ 9

To determine whether a specific instance of the use of force was objectively reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Blankenhorn*, 485 F.3d at 477 (quoting *Graham,* 490 U.S. at 396). Factors relevant to this inquiry include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Courts in the Ninth Circuit also look to whether the officer "consider[ed] what other tactics if any were available to effect the arrest," and whether the officers warned the subject that force would be used against them. *See Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (citing *Headwaters Forest Defense v. Cnty. of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000); *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001)).

Here, the intrusion on Mr. Shaffer's Fourth Amendment interests was significant: "use of the X26 taser and similar devices in dart mode constitutes an intermediate, significant level of force that must be justified by the governmental interest involved." *Bryan*, 630 F.3d at 810 (internal quotation omitted). While non-lethal, the "excruciating pain that radiates throughout the body" makes the nature of a taser shot a serious intrusion into an individual's right to be free from unreasonable seizures. *Id.* at 825 ("The X26 thus intrudes upon the victim's physiological functions and physical integrity in a way that other non-lethal uses of force do not."). However, in this particular case, the *quality* of the intrusion on Mr. Shaffer's liberty interests appears to

ORDER * 10

be as minimal as a taser shot could be. Mr. Shaffer was tased only once, was eased to the ground by the officers, and testified at deposition that he has no recollection of the actual blow or the pain it caused. Finally, Mr. Shaffer presented no evidence tending to show that he suffered physical injury or emotional distress with physical manifestations as a result of the incident.

On the other side of the balance, the government's interest in the use of force in this instance was quite strong. While Mr. Shaffer's suspected offense of driving under the influence was non-violent, driving under the influence is a dangerous offense that requires a swift and vigilant governmental response. It is undisputed that when making his turn off Rte. 395, Mr. Shaffer turned so sharply that he entered the left turn lane of that street causing a vehicle entering that lane to abruptly stop to avoid a collision with Mr. Shaffer's vehicle. ECF No. 34 at 2-3 ¶ 2. And while Mr. Shaffer was not attempting to flee the scene or "actively" resisting the officers efforts to apprehend him, he refused to comply with a minimum of three of Deputy Benningfield's commands to place his hands behind his back. Most importantly, the officers had a credible concern for their safety in the situation in light of the fact that Mr. Shaffer was highly intoxicated, easily became angry during his interaction with the officers, was argumentative and used profanity, and was of an imposing physical stature; officer safety is "[t]he most important factor under *Graham*." *Bryan*, 630 F.3d at 826 (internal quotation omitted). The record indicates that Officer Thompson considered the alternative of "hand-to-hand" force, but determined that this would cause a greater risk of injury to himself, as well as to Mr.

ORDER * 11

Shaffer. *See* Thompson Dep., ECF No. 36-5 at 29:13-24. Most importantly, Mr. Shaffer was warned at least two times that a taser would be used against him if he did not comply (including Officer Thompson's salient mention of the laser sight), and he still did not comply, which reasonably increased the officers' concern for their own safety. *See Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) (finding that officer's "safety interest" "increased further when the group was warned by police that a chemical irritant would be used if they did not move back from the area, and the group refused to comply.").

On balance, the Court finds that the government's interest in the use of force justified the use of a single shot from the X26 taser in this case. Mr. Shaffer cites extensively to the Ninth Circuit's decision in *Bryan v. MacPherson*, which held that an officer's use of the same taser during a traffic stop constituted excessive force. However, the Ninth Circuit's decision in *Bryan* that the officer's use of this "intermediate, significant level of force" was excessive was compelled by the utter lack of facts in the record demonstrating that officer safety or another governmental interest was implicated: the plaintiff was pulled over for a passenger-seatbelt violation, was standing twenty to twenty-five feet from the officer, was not attempting to flee, and was facing away from the officer. *Id.* at 822. Because of the distance, the officer could not mitigate the taser's paralyzing effects by easing the plaintiff to the ground, and as a result of the fall the plaintiff fractured four teeth and suffered facial contusions. *Id.* The officer had "clear, reasonable, and less intrusive alternatives" to the use of the taser. *Id.* at 831. Most importantly, in stark contrast to this

ORDER * 12

case, the officer in *Bryan* gave no warning before using his taser on the plaintiff. *Id.* at 832.

In sum, because the Court finds that Officer Thompson's use of force in this case was objectively reasonable, it follows that Mr. Shaffer's Fourth Amendment rights were not violated. Accordingly, Officer Thompson is entitled to qualified immunity. In addition, the Court holds that on the date of this incident in June of 2007, there was no authority in the Ninth Circuit which would have put a reasonable officer in the position of Officer Thompson on notice that the use of a Taser in dart mode constituted an intermediate and significant level of force which could in circumstances other than those of this case amount to the use of excessive force in violation of a person's Fourth Amendment right to be free from unreasonable seizure. *Bryan v. MacPherson,* 630 F. 3d 805, 809 (9th Cir 2010). The Court grants the City Defendants' motion with regard to Officer Thompson.

### b.   City of Kennewick

The Complaint in this matter asserts that the City of Kennewick is "vicariously liable for the actions of its agent(s)," ECF No. 1 ¶ 6.2, which appears to assert that the City of Kennewick is liable under the doctrine of *respondeat superior*. In his response to Defendants' motion, recognizing that local governments may not be held liable under a *respondeat superior* theory, *see Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978), Mr. Shaffer argues that the City of Kennewick's failure to train its police officers regarding the use of the X26 taser amounted to deliberate indifference to the constitutional rights of the people its officers came into contact with.

ORDER * 13

For the reasons stated above, Mr. Shaffer's § 1983 claim against the City of Kennewick fails as a matter of law because the first element of a *Monell* claim requires the plaintiff to establish "that he possessed a constitutional right of which he was deprived." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). Having already determined the Officer Thompson's use of force was objectively reasonable under the circumstances and that no constitutional violation occurred, the Court grants the City Defendants' motion in this regard and dismisses Mr. Shaffer's § 1983 claim against the City of Kennewick.

### ii. Negligence and Negligent Infliction of Emotional Distress Claims

The Complaint also asserts claims for negligence and negligent infliction of emotional distress against both Officer Thompson and the City of Kennewick.

In negligence actions against government entities and their employees, Washington courts follow the so-called "public duty doctrine," which holds that police officers may not be liable in negligence for actions they take during the investigation of crimes because they are acting out of a duty owed to the public, and not to the specific individual asserting an injury. *Cummins v. Lewis Cnty.*, 156 Wn.2d 844, 852 (2006). "Generally, no liability will attach for a public official's negligent conduct unless the plaintiff can show that the duty was owed to [him] rather than to the general public." *Donaldson v. City of Seattle*, 65 Wn. App. 661, 666 (1992). Here, because Officer Thompson had not yet taken Mr. Shaffer into custody, and had taken no other actions

toward him that would give rise to a duty owed specifically to Mr. Shaffer, the public duty doctrine shields Officer Thompson from liability. *Cf.*, *Shea v. City of Spokane*, 17 Wn. App. 236, 241-42 (1977) (finding public duty doctrine inapplicable to claims against jail physician because "when one is arrested and imprisoned for the protection of the public, he is deprived of his liberty, as well as his ability to care for himself").

Furthermore, even if the public duty doctrine did not apply in this case, Mr. Shaffer's negligence action would fail as a matter of law because as discussed above, Officer Thompson did not use excessive force against him and thus did not breach a duty to Mr. Shaffer. Accordingly, the Court dismisses Mr. Shaffer's negligence and negligent infliction of emotional distress claims, and grants the City Defendants' motion in this regard.

### iii. Assault and Battery Claim

The Complaint also alleges a claim for assault and battery against Officer Thompson and the City of Kennewick. However, this claim fails as a matter of law because when an officer's use of force is reasonable and not excessive under the circumstances, the officer is entitled to state qualified immunity from assault and battery claims. *McKinney v. City of Tukwila*, 103 Wn. App. 391, 408-09 (2000) (citing *Guffey v. State*, 103 Wn.2d 144, 153 (1984)). Accordingly, Mr. Shaffer's assault and battery claim must be dismissed.

///
///
///
///

ORDER * 15

**IV. Conclusion**

For the reasons discussed above, **IT IS HEREBY ORDERED:**

1. The City Defendants' Motion for Summary Judgment, **ECF No. 33**, is **GRANTED**. This matter is **DISMISSED.**

2. **JUDGMENT** shall be **ENTERED in Defendants' favor with prejudice.**

3. All pending trial and hearing dates are **STRICKEN**.

4. This file shall be **CLOSED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this ____16th____ day of August 2012.


                           S/ Edward F. Shea
                            EDWARD F. SHEA
                 Senior United States District Judge

`Q:\EFS\Civil\2011\5101.msj.lc2a.wpd`

ORDER \* 16